IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAURA TRUBNICK, )
)
        Plaintiff, )
)
  vs. )   Civil Action No.   2:17-710
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
)
        Defendant. )
)
)

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 7, 11]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 8, 12]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

under Title II of the Social Security Act ("Act"). On or about January 20, 2014, Plaintiff applied for DIB. [ECF No. 5-7 (Ex. 1D)]. In her application, she alleged that since May 4, 2013, she had been disabled due to bipolar, depression, memory disorder, crohns, hypersomnia, and fatigue. [ECF No. 5-8 (Ex. 1E)]. Her date last insured is December 31, 2018. [ECF No. 5-2 at 24].[2] The state agency denied her claims initially, and she requested an administrative hearing. [ECF No. 5-5 (Exs. 3B, 4B)]. Administrative Law Judge ("ALJ") Sarah Ehasz held a hearing on December 3, 2015, at which Plaintiff was represented by counsel. [ECF No. 5-3, at 39-89]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 79-88. In a decision dated January 22, 2016, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act between May 4, 2013 and April 19, 2015.[3] [ECF No. 5-2, at 22-34]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on April 6, 2017, the Appeals Council denied Plaintiff's request for review. [ECF No. 5-9 (Ex. 11E); ECF No. 5-2, at 1-6]. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 7 & 11]. The issues are now ripe for my review.

---

[2] To receive DIB, Plaintiff must establish that she became disabled prior to December 31, 2018, the date on which her insured status expired, or "date last insured." 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

[3] Plaintiff sought a closed period of disability for the period from May 4, 2013 to April 19, 2015. Plaintiff started a job as a therapist at an intensive outpatient treatment mental health facility on April 20, 2015. [ECF No. 5-3 (Testimony), at 46-47, 51-52; ECF No. 5-8 (Ex. 7E)].

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not,

whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B. WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION EVIDENCE AND PROPERLY FORMULATED PLAINTIFF'S RFC**

The ALJ found that Plaintiff had severe impairments, including depression, bipolar disorder, and memory loss. [ECF No. 5-2, at 24]. She then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 25-26. The ALJ further found that, during the closed period, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was not capable of any precision work defined as work requiring obtaining precise tolerances, standards, or limits; she had the ability to take notes or refer to written or diagrammatic instruction; her pace would be self-set, but general production demands would be met; she was not capable

of negotiation, mentoring, or instruction as defined by the Dictionary of Occupational Titles; and she was limited to only occasional contact and interaction with coworkers, supervisors, and the public. [ECF No. 5-2, at 27-32]. The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. Id. at 32-33.

Here, Plaintiff argues the ALJ's findings are deficient because she did not appropriately evaluate the medical opinions and evidence regarding her mental impairments. Id. at 3-19. Specifically, Plaintiff contends that the ALJ improperly rejected the opinions of treating neurologist, Eric McDade, D.O., treating psychiatrist, Daniel Shrager, M.D., and counselor, Marcie Barent, LCSW, without citing to contradictory treating source evidence. Id.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must she give

5

that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 404.1527(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, she "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of her final

6

determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Security, 529 F.3d 198, 203-04 (3d Cir. 2008).

In this case, Plaintiff spends a significant portion of her brief describing how the medical evidence supports her claim for disability. The standard, however, is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's findings. See Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). As courts have explained:

> [The] question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's finding. . . . Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

Hundley v. Colvin, Civil Action No. 16-153, 2016 WL 6647913, at *2 (W.D. Pa. Nov. 10, 2016). Thus, Plaintiff's argument in this regard is misplaced.

To the extent Plaintiff argues that substantial evidence does not support the ALJ's decision to assign little weight to the treating providers' opinions, I disagree. An ALJ is not required to accept a treating provider's opinion uncritically. Rather, the ALJ must weigh all of the record evidence as set forth above. In the case at hand, the ALJ did exactly that. As shown more fully below, the ALJ reviewed in detail all of the evidence and then properly assigned appropriate weight to the opinion evidence, including the opinions of Plaintiff's treating providers.

1. **Dr. McDade**

Neurologist Dr. McDade treated Plaintiff for depression and related cognitive complaints. After a visit in July 2014, Dr. McDade opined that Plaintiff would not be able "to return to her previous level of employment." [ECF No. 5-14 (Ex. 12F/9)]. The ALJ gave this opinion "great weight" and agreed that, given the evidence regarding Plaintiff's fluctuating depression and the fact that she had recently completed an intensive outpatient therapy program, she was not capable at that time of working as a therapist. [ECF No. 5-2, at 30 (citing numerous record exhibits)]. The ALJ noted, however, that Dr. McDade's opinion did not mean that Plaintiff was incapable of working at another job.

In January 2015, Dr. McDade completed a one-page "check box" form on which he indicated that, during an 8-hour workday, Plaintiff would often have difficulty: interacting with supervisors and coworkers; managing even a low stress work environment; and maintaining concentration, pace, and task persistence. [ECF No. 5-13 (Ex. 10F)]. Dr. McDade also opined that Plaintiff experiences approximately 22 bad days per month during which her symptoms are increased and she would not be able to complete an 8-hour work shift. Id. The ALJ gave this opinion "little weight" because it was inconsistent with Dr. McDade's treatment record dated the same day which indicated, inter alia, that Plaintiff reported her depression had been improving and that she had begun to put in job applications. [ECF No. 5-2, at 30 (citing Ex. 12F/1)]. The ALJ further stated that, in addition, Dr. McDade's opinion was conclusory and not supported by the record as a whole, which showed improvement in depressive symptoms and only mild cognitive deficits with generally average scores on neurocognitive testing. Id. (citing Exs. 2F, 3F, 4F, 5F, 6F, 7F, 12F, 13F, 14F, 16F). Inconsistency and lack of support are valid and acceptable factors in weighing opinion evidence. See 20 C.F.R. § 404.1527; see also Hevner v. Comm'r Soc. Sec., 675 F. App'x 182, 184 (3d Cir. 2017) ("'[C]heck box' forms that require little or no

explanation . . . are 'weak evidence at best' in the disability context."). For all of these reasons, I find that the ALJ appropriately discounted Dr. McDade's opinion.

**2. Dr. Shrager**

Psychiatrist Daniel Shrager treated Plaintiff for her depression and bipolar disorder. In January 2015, Dr. Shrager completed the same check box form as Dr. McDade,[4] similarly concluding that, during an 8-hour workday, Plaintiff would often have difficulty: interacting with supervisors and coworkers; managing even a low stress work environment; and maintaining concentration, pace, and task persistence. [ECF No. 5-13 (Ex. 9F)]. Dr. Shrager further opined that Plaintiff experiences approximately 20 bad days per month during which her symptoms are increased and she would not be able to complete an 8-hour work shift. Id. As with Dr. McDade, the ALJ gave Dr. Shrager's opinion "little weight" because it was conclusory and not supported by the record as a whole which showed improvement in depressive symptoms and only mild cognitive deficits with generally average scores on neurocognitive testing. [ECF No. 5-2, at 30 (citing Exs. 2F, 3F, 4F, 5F, 6F, 7F, 12F, 13F, 14F, 16F)]. The ALJ further noted, and Plaintiff admits, that there were not contemporaneous records from Dr. Shrager and that Dr. Shrager's treating records were sparse with few, if any, objective findings. Id. at 30-31 (citing Exs. 4F, 16F); see also ECF No. 8, at 18. In this regard, the ALJ added that Dr. Shrager's opinion mirrored that of Dr. McDade and that Dr. McDade's contemporaneous records were inconsistent with Dr. Shrager's opinion. [ECF No. 5-2, at 31 (citing Ex. 12)]. As set forth above, check-box forms such as that Dr. Shrager completed are weak evidence at best, and inconsistency and lack of support are valid and acceptable factors in weighing opinion evidence.[5] Accordingly, I find that

---

[4] In fact, when Dr. McDade completed the form, he had to cross out Dr. Shrager's name and write in his own. [ECF No. 5-13 (Exs. 9F, 10F)].

[5] Although Plaintiff acknowledges that consistency and supportability are appropriate factors, she

9

the ALJ properly discounted Dr. Shrager's opinion.

### 3. Marcie Barent, LCSW

Counselor Marcie Barent saw Plaintiff for outpatient psychotherapeutic treatment on a weekly basis since 2006. [ECF No. 5-13 (Ex. 7F)]. On or about February 28, 2014, Ms. Barent completed a "case summary" regarding Plaintiff's mental health status. Id. In the summary, Ms. Barent states that Plaintiff's mental health and well-being fluctuated since 2011 and that she struggled with increased symptoms of severe bipolar depression. Id. Ms. Barent recognized that Plaintiff was not fired from her previous job, but opined that her mental health impairments compromised her performance and contributed to her not being reassigned to a different project. Id. Ms. Barent opined that Plaintiff was not capable of getting or keeping a job and that her ability to complete the most basic of tasks was severely limited. Id. She stated that Plaintiff had not maintained mood stability in any significant way for the past 12 months and that she had concerns about the impact on Plaintiff's mental state if she were to return to work. Id.

In considering this report, the ALJ correctly noted that, as a licensed clinical social worker, Ms. Barent was not an "acceptable medical source" as defined by the then-applicable regulations. See ECF No. 5-2, at 31 (citing 20 C.F.R. § 404.1513).[6] Therefore, Ms. Barent's opinion did not qualify as a "medical opinion" pursuant to 20 C.F.R. § 404.1527, and the ALJ appropriately considered it only to the extent that it helped her understand how Plaintiff's mental impairments

---

disagrees with the ALJ's findings in this regard and points to examples of record evidence that she contends support and are consistent with Dr. McDade and Dr. Shrager's opinions. [ECF No. 8, at 11-17]. As previously set forth, however, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's findings.

[6] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. § 404.1527 (2017); 20 C.F.R. § 404.1520c (2017).

affected her ability to work.  Id. (citing 20 C.F.R. § 404.1513(e)).  The ALJ recognized that Ms. Barent had a long treatment relationship with Plaintiff, but she gave her opinion only partial weight because Ms. Barent reported that she does not keep treatment records and, thus, there was no information available from Ms. Barent other than the February 14 summary.  Id.  The ALJ agreed that Plaintiff was suffering from severe mental issues, but stated that this fact did not mean that Plaintiff was incapable of doing any work whatsoever.  Id.  In support, the ALJ pointed to hearing testimony and other medical records showing that Plaintiff had generally average neurocognitive abilities and was able to live alone, even if she did not maintain her home up to her previous standards.  Id. (citing Exs. 5F, 6F, and hearing testimony).  The ALJ further noted that Ms. Barent rendered her opinion shortly before Plaintiff began intensive outpatient therapy, after which Plaintiff improved and did very well for several months.  Id. (citing Exs. 13F, 14F).  After careful review of the evidence, I find that the ALJ's evaluation of Ms. Barent's opinion and her explanation therefor is sufficient and supported by the substantial evidence she cites.  Accordingly, remand is not warranted on this basis.

To the extent Plaintiff further argues that, after discounting the treating provider evidence, the ALJ improperly relied on her own lay opinion of the medical data to deny benefits, this argument is without merit.  As set forth above, the ALJ gave great weight to Dr. McDade's opinion that Plaintiff could not return to her previous level of employment and partial weight to Ms. Barent's assessment that Plaintiff was suffering from severe mental issues.  The ALJ concluded, however, that despite Plaintiff's severe impairments and the fluctuation of her symptoms, that she had the RFC to perform some work even during her worst period of functional capability.  [ECF No. 5-2, at 27].  Contrary to Plaintiff's argument, the ALJ supported this RFC finding with substantial record evidence, and not her lay opinion.  In terms of additional medical opinion evidence, the

ALJ gave great weight to the state agency psychological consultant, Sandra Banks, Ph.D., who opined that Plaintiff had moderate limitations in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods and respond appropriately to changes in the work setting. Id. at 31 (citing Ex. 1A). It is well-established that State agency opinions merit significant consideration. See S.S.R. 96-6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527([e]) and 416.927([e]) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)...."). Here, in support of her decision to give Dr. Banks's opinion great weight, the ALJ noted that Dr. Banks was familiar with the Social Security Disability program and that the opinion was consistent with the record evidence showing only mild cognitive deficits, generally average performance on neurocognitive testing, and reported improvement in symptoms during and after the intensive outpatient program. Id. at 31-32 (citing Exs. 2F, 3F, 4F, 5F, 6F, 7F, 12F, 13F, 14F, 16F). The ALJ even went beyond Dr. Banks's restrictions and cited record evidence supporting additional social limitations that she included in the RFC. Id.

Additionally, the ALJ properly considered other record evidence, including Plaintiff's testimony, her course of treatment, and her activities of daily living in reaching her RFC finding. Among other things, the ALJ cited Plaintiff's mental status examinations reflecting less than disabling symptoms; cognitive assessment scores of 27 out of 29 in 2013 and 28 out of 29 in 2015; and generally average memory testing scores. [ECF No. 5-2, at 28-29 (citing Exs. 2F, 5F, 6F, 12F, 13F, 14F, 16F)]. The ALJ also cited Plaintiff's activities of daily living which included

living on her own, cooking, cleaning, doing dishes, grocery shopping every two weeks, managing her finances, visiting with friends, regularly talking to friends on the telephone, and occasionally going to the movies or out to dinner. Id. at 29 (citing hearing testimony and Exs. 3E, 17F). The ALJ further noted that Plaintiff lost her prior job due to a funding issue and that she collected unemployment benefits for about a year, which was inconsistent with her disability allegations. Id.; see Myers v. Barnhart, 57 F. App'x 990, 997 (3d Cir. 2003) ("[I]t was entirely proper for the ALJ to consider that [the claimant's] receipt of unemployment benefits was inconsistent with a claim of disability during the same period."). The ALJ also pointed to Plaintiff's testimony and evidence that she looked for work online; went to the career development center and applied for about 15 jobs in 2014 and 2015; went on two job interviews; refused a job lead in May 2014 because it was not the type of work she wanted; and volunteered at a hospice and animal shelter as evidence that she had greater functional abilities than alleged. Id. (citing hearing testimony and Exs. 3F, 13F, 17F).

Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."). Here, the ALJ did not discount Plaintiff's mental health symptoms entirely and included restrictions in her RFC finding related to Plaintiff's credibly-established mental health impairments, including a limitation to no precision work; an ability to take notes or refer to written or diagrammatic instruction; a self-set pace; no negotiation, mentoring, or instruction as defined by the D.O.T.; and only occasional interaction with coworkers, supervisors, and the public. Id. at 27. In short, the ALJ's RFC generously accounted for the limitations established by the evidence of record, and her findings are supported by substantial

evidence. Accordingly, I find that the ALJ did not improperly rely on lay opinion or otherwise err in formulating Plaintiff's RFC with regard to her mental limitations. Because substantial evidence supports the ALJ's conclusions, there is no basis for remand.

  C. **WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

Plaintiff argues that the ALJ's assessment of her credibility is defective because she failed to consider her "stellar work history" in making her credibility determination. [ECF No. 8, at 19-21]. This argument is without merit.

It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

Plaintiff's argument that the ALJ failed to favorably consider her long work history is not fatal to her credibility analysis. Contrary to Plaintiff's assertions, the ALJ did not fail to account for Plaintiff's work history. She acknowledged that history in her opinion and agreed Plaintiff could not perform her past work during the closed period. [ECF No. 5-2, at 27-32]. As set forth above, the ALJ did not discount Plaintiff's testimony regarding her symptoms in its entirety. Rather, the ALJ found that testimony partially credible and her RFC finding contained numerous restrictions to accommodate Plaintiff's subjective complaints. See id. To the extent Plaintiff

alleged even greater limitations or symptoms, the ALJ properly explained and supported why that testimony was not fully credible.

In short, this is not a case where the ALJ failed to discuss Plaintiff's limitations or her reasons for her RFC finding and credibility determinations, thus precluding meaningful review. To the contrary, the ALJ thoroughly and thoughtfully addressed these issues, the associated record evidence, and her conclusions regarding the same. As set forth herein, the ALJ's findings are supported by substantial evidence. Plaintiff's disagreement or dissatisfaction with these findings is not cause for remand.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAURA TRUBNICK,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

Civil Action No. 2:17-710

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 21st day of May, 2018, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 7] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).